1  JENNIFER L. BARTLETT, CA Bar No. 183154
   JORDAN BLUMENFELD-JAMES, CA Bar No. 235185
2  SIMON GREENSTONE PANATIER BARTLETT, P.C.
   3780 Kilroy Airport Way, Suite 540
3  Long Beach, California 90806
   Telephone (562) 590-3400
4  Facsimile (562) 590-3412

5

6  JOHN M. CARON, Esq., CA Bar No. 130633
   THE LAW OFFICE OF WORTHINGTON & CARON, P. C.
7  273 W. 7th Street
   San Pedro, California 90731
   Telephone (310) 221-8090
8  Facsimile (310) 221-8095

9  Attorneys for Plaintiffs

10

11

12             SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                  FOR THE COUNTY OF LOS ANGELES

14  KATHRYN SCHACKNE,                    Case No.   BC 6 3 7 0 7 4
    Individually and as Personal
15  Representative of the Estate of      THIS ACTION CONSTITUTES COMPLEX
    MICHAEL SCHACKNE, Deceased,          ASBESTOS LITIGATION – SUBJECT TO
16  and KYLEE STEPNER and KACIN          THE GENERAL ORDERS CONTAINED IN
    SCHACKNE,                            FILE NO. C 700000 – DEPT. 59
17
                          Plaintiffs,    COMPLAINT FOR WRONGFUL DEATH
18                                       AND A SURVIVAL ACTION – ASBESTOS
                                         (NEGLIGENCE; STRICT LIABILITY;
19       vs.                             CONSPIRACY)

20  3M COMPANY a/k/a MINNESOTA
    MINING & MANUFACTURING
21  COMPANY;
    AMERICAN INTERNATIONAL
22  INDUSTRIES INC. (sued individually
    and as successor-in-interest to THE
23  NESLEMUR COMPANY);
    ARKEMA INC. f/k/a PENNWALT
24  CORPORATION;
    AUTOZONE, INC.;
25  AUTOZONE WEST, INC. (formerly
    known as CHIEF AUTO PARTS, INC.
26  for CHIEF AUTO PARTS);
    BAKERS PRIDE OVEN
27  COMPANY, LLC f/k/a BAKERS
    PRIDE OVEN COMPANY, INC.;
28  BASF CATALYSTS LLC (sued

                          1
COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

CONFORMED COPY
ORIGINAL FILED
OCT 01 2018
Sherri R. Carter, Executive Officer/Clerk
By: Sherrie L. Coleman, Deputy

EXHIBIT
C

1  individually and as successor-in-interest
   to ENGELHARD CORPORATION and
2  its subsidiary PITA REALTY
   LIMITED s/b/m EASTERN
3  MAGNESIA TALC COMPANY);
   **BORG WARNER CORPORATION**
4  by its successor-in-interest BORG-
   WARNER MORSE TEC, INC.;
5  **BRENNTAG NORTH AMERICA,**
   **INC.** (sued individually and as
6  successor-in-interest to MINERAL
   PIGMENT SOLUTIONS, INC. and as
7  successor-in-interest to WHITTAKER
   CLARK & DANIELS, INC.);
8  **BRENNTAG SPECIALTIES, INC.**
   f/k/a MINERAL PIGMENT
9  SOLUTIONS, INC. (sued individually
   and as successor-in-interest to
10 WHITTAKER CLARK & DANIELS,
   INC.);
11 **CALAVERAS ASBESTOS, LTD;**
   **CHARLES B. CHRYSTAL**
12 **COMPANY, INC.;**
   **CIRRUS ENTERPRISES, LLC** (sued
13 individually and as successor-in-interest
   to E.V. ROBERTS AND
14 ASSOCIATES, INC. and EVRA, INC.);
   **COLGATE-PALMOLIVE**
15 **COMPANY** (sued individually and as
   successor-in-interest to THE MENNEN
16 COMPANY);
17 **CSK AUTO, INC.** (sued individually
   and as successor-by-merger to
18 KRAGEN AUTO SUPPLY CO. and
   SHUCKS AUTO PARTS);
19 **CYPRUS AMAX MINERALS**
   **COMPANY** (sued individually, doing
20 business as, and as successor to
   METROPOLITAN TALC CO. INC.
21 and CHARLES MATHIEU INC. and
   SIERRA TALC COMPANY and
22 UNITED TALC COMPANY);
23 **CYTEC INDUSTRIES, INC.** (sued
   individually and as successor-in-interest
24 to AMERICAN CYANAMID);
   **DAP PRODUCTS, INC.;**
25 **EASTERN MAGNESIA TALC**
   **COMPANY;**
26 **FORD MOTOR COMPANY;**
   **GENUINE PARTS COMPANY** a/k/a
27 NAPA;
28

| | |
|---|---|
| 1 | GEORGIA-PACIFIC LLC f/k/a |
| 2 | GEORGIA-PACIFIC CORPORATION; |
| | G. S. BLODGETT CORPORATION; |
| 3 | HARCO LLC f/k/a HARCO |
| 4 | LABORATORIES, INCORPORATED; |
| | HENKEL CORPORATION f/k/a |
| 5 | HENKEL LOCTITE CORPORATION |
| 6 | (sued as successor to PERMATEX |
| | COMPANY, INC. and individually and |
| 7 | as successor-in-interest to DEXTER |
| | HYSOL AEROSPACE, INC.); |
| 8 | HENNESSY INDUSTRIES, INC.; |
| | HENRY COMPANY LLC; |
| 9 | W.W. HENRY COMPANY; |
| 10 | HOLLEY PERFORMANCE |
| | PRODUCTS; |
| 11 | HONEYWELL INTERNATIONAL, |
| | INC. f/k/a ALLIED-SIGNAL, |
| 12 | INC.(sued as successor-in-interest to |
| 13 | BENDIX CORPORATION and as |
| | successor to STROMBERG |
| 14 | CARBURETOR); |
| | IMERYS TALC AMERICA, INC. |
| 15 | (sued individually and as successor-in- |
| 16 | interest to LUZENAC AMERICA, INC. |
| | successor-in-interest to CYPRUS |
| 17 | INDUSTRIAL MINERALS |
| | COMPANY); |
| 18 | INSIGHT PHARMACEUTICALS |
| 19 | CORPORATION, a subsidiary of |
| | PRESTIGE BRANDS HOLDINGS, |
| 20 | INC.; |
| | INSIGHT PHARMACEUTICALS |
| 21 | LLC, a subsidiary of PRESTIGE |
| 22 | BRANDS HOLDINGS, INC.; |
| | ITW POLYMERS SEALANTS |
| 23 | NORTH AMERICA a/k/a/ ITW |
| | ENGINEERED POLYMERS NORTH |
| 24 | AMERICA; |
| 25 | METROPOLITAN LIFE |
| | INSURANCE COMPANY; |
| 26 | MW CUSTOM PAPERS, LLC as |
| | successor-in-interest to THE MEAD |
| 27 | CORPORATION; |
| | NOVARTIS PHARMACEUTICALS |
| 28 | CORPORATION (sued individually |
| | and as successor-in-interest to CIBA- |

3

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

| | |
|---|---|
| 1 | GEIGY CORPORATION and its subsidiary CIBA CONSUMER PHARMACEUTICALS); |
| 2 | |
| 3 | **O'REILLY AUTO ENTERPRISES LLC** (sued as successor-by-merger to CSK AUTO, INC.); |
| 4 | |
| 5 | **O'REILLY AUTOMOTIVE STORES, INC.;** |
| 6 | **THE PEP BOYS - MANNY MOE & JACK OF CALIFORNIA;** |
| 7 | **PFIZER INC.;** |
| 8 | **PITA REALTY LIMITED** (sued individually and as successor-in-interest to EASTERN MAGNESIA TALC COMPANY); |
| 9 | |
| 10 | **PNEUMO ABEX LLC** (sued as successor-in-interest to ABEX CORPORATION); |
| 11 | |
| 12 | **PRESTIGE BRANDS HOLDINGS, INC.;** |
| 13 | **THE PROCTER & GAMBLE COMPANY** (sued individually and as successor-in-interest to THE SHULTON GROUP and/or SHULTON INC.); |
| 14 | |
| 15 | |
| 16 | **R. T. VANDERBILT HOLDING COMPANY, INC.** (sued individually and as successor-in-interest to R. T. VANDERBILT COMPANY, INC.); |
| 17 | |
| 18 | **SHELL OIL COMPANY;** |
| 19 | **SHULTON INC.** (sued individually and as successor to THE SHULTON GROUP and/or SHULTON, INC.); |
| 20 | |
| 21 | **STANDARD MOTOR PRODUCTS, INC.** (sued as successor-in-interest to EIS AUTOMOTIVE); |
| 22 | |
| 23 | **THE ANCHOR;** **UNION CARBIDE CORPORATION;** |
| 24 | **UNITED TECHNOLOGIES CORPORATION** (sued as successor-in-interest to PRATT & WHITNEY); |
| 25 | |
| 26 | **VANDERBILT MINERALS, LLC** (sued as successor-by-merger to R. T. VANDERBILT COMPANY, INC.); |
| 27 | |
| 28 | **WHITTAKER CLARK & DANIELS, INC.;** |

4

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

| | |
|---|---|
| 1 | **WYETH HOLDINGS LLC** f/k/a |
| 2 | **WYETH HOLDINGS CORPORATION** f/k/a **AMERICAN** |
| 3 | **CYANAMID COMPANY** (sued individually and as successor-in-interest |
| 4 | to **THE SHULTON GROUP** and/or |
| 5 | **SHULTON INC.**);<br>and **DOES 1-450, INCLUSIVE,** |
| 6 | |
| 7 | Defendants. |
| 8 | |

**GENERAL ALLEGATIONS**

COMES NOW Plaintiffs KATHRYN SCHACKNE, Individually and as Personal Representative of the Estate of MICHAEL SCHACKNE, Deceased, and KYLEE STEPNER and KACEE SCHACKNE, who bring this action for wrongful death pursuant to section 377.60 of the California Code of Civil Procedure, and comes now KATHRYN SCHACKNE, Individually and as Personal Representative of the Estate of MICHAEL SCHACKNE, and KYLEE STEPNER and KACEE SCHACKNE, who bring this survival action pursuant to section 377.30 of the California Code of Civil Procedure, and complains and alleges as follows:

1.     The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 450, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly.   Plaintiffs are informed and believe, and thereon allege that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

2.     At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venture of his co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believe, and thereon allege that at all times

5

1  herein mentioned, Defendants 3M **COMPANY** a/k/a MINNESOTA MINING &
2  MANUFACTURING COMPANY; **AMERICAN INTERNATIONAL INDUSTRIES INC.**
3  (sued individually and as successor-in-interest to THE NESLEMUR COMPANY);
4  **ARKEMA INC.** f/k/a PENNWALT CORPORATION; **AUTOZONE, INC.; AUTOZONE**
5  **WEST, INC.** (formerly known as CHIEF AUTO PARTS, INC. for CHIEF AUTO PARTS);
6  **BAKERS PRIDE OVEN COMPANY, LLC** f/k/a BAKERS PRIDE OVEN COMPANY,
7  INC.; **BASF CATALYSTS LLC** (sued individually and as successor-in-interest to
8  ENGELHARD CORPORATION and its subsidiary PITA REALTY LIMITED s/b/m·
9  EASTERN MAGNESIA TALC COMPANY); **BORG WARNER CORPORATION** by its
10 successor-in-interest BORG-WARNER MORSE TEC, INC.; **BRENNTAG NORTH**
11 **AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT
12 SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS,
13 INC.); **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS,
14 INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS,
15 INC.); **CALAVERAS ASBESTOS, LTD; CHARLES B. CHRYSTAL COMPANY,**
16 INC.; **CIRRUS ENTERPRISES, LLC** (sued individually and as successor-in-interest to
17 E.V. ROBERTS AND ASSOCIATES, INC. and EVRA, INC.); **COLGATE-PALMOLIVE**
18 **COMPANY** (sued individually and as successor-in-interest to THE MENNEN COMPANY);
19 **CSK AUTO, INC.** (sued individually and as successor-by-merger to KRAGEN AUTO
20 SUPPLY CO. and SHUCKS AUTO PARTS); **CYPRUS AMAX MINERALS COMPANY**
21 (sued individually, doing business as, and as successor to METROPOLITAN TALC CO. INC.
22 and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC
23 COMPANY); **CYTEC INDUSTRIES, INC.** (sued individually and as successor-in-interest
24 to AMERICAN CYANAMID); **DAP PRODUCTS, INC.; EASTERN MAGNESIA TALC**
25 **COMPANY; FORD MOTOR COMPANY; GENUINE PARTS COMPANY** a/k/a
26 NAPA; **GEORGIA-PACIFIC LLC** f/k/a GEORGIA-PACIFIC CORPORATION; G. S.
27 **BLODGETT CORPORATION; HARCO LLC** f/k/a HARCO LABORATORIES,
28 INCORPORATED; **HENKEL CORPORATION** f/k/a HENKEL LOCTITE

1  CORPORATION (sued as successor to PERMATEX COMPANY, INC. and individually and

2  as successor-in-interest to DEXTER HYSOL AEROSPACE, INC.); HENNESSY

3  INDUSTRIES, INC.; HENRY COMPANY LLC; W. W. HENRY COMPANY;

4  HOLLEY PERFORMANCE PRODUCTS; HONEYWELL INTERNATIONAL, INC.

5  f/k/a ALLIED-SIGNAL, INC.(sued as successor-in-interest to BENDIX CORPORATION and

6  as successor to STROMBERG CARBURETOR); IMERYS TALC AMERICA, INC. (sued

7  individually and as successor-in-interest to LUZENAC AMERICA, INC. successor-in-interest

8  to CYPRUS INDUSTRIAL MINERALS COMPANY); INSIGHT PHARMACEUTICALS

9  CORPORATION, a subsidiary of PRESTIGE BRANDS HOLDINGS, INC.; INSIGHT

10  PHARMACEUTICALS LLC, a subsidiary of PRESTIGE BRANDS HOLDINGS, INC.;

11  ITW POLYMERS SEALANTS NORTH AMERICA a/k/a/ ITW ENGINEERED

12  POLYMERS NORTH AMERICA; METROPOLITAN LIFE INSURANCE COMPANY;

13  MW CUSTOM PAPERS, LLC as successor-in-interest to THE MEAD CORPORATION;

14  NOVARTIS PHARMACEUTICALS CORPORATION (sued individually and as

15  successor-in-interest to CIBA-GEIGY CORPORATION and its subsidiary CIBA

16  CONSUMER PHARMACEUTICALS); O'REILLY AUTO ENTERPRISES LLC (sued as

17  successor-by-merger to CSK AUTO, INC.); O'REILLY AUTOMOTIVE STORES, INC.;

18  THE PEP BOYS - MANNY MOE & JACK OF CALIFORNIA; PFIZER INC.; PITA

19  REALTY LIMITED (sued individually and as successor-in-interest to EASTERN

20  MAGNESIA TALC COMPANY); PNEUMO ABEX LLC (sued as successor-in-interest to

21  ABEX CORPORATION); PRESTIGE BRANDS HOLDINGS, INC.; THE PROCTER &

22  GAMBLE COMPANY (sued individually and as successor-in-interest to THE SHULTON

23  GROUP and/or SHULTON INC.); R. T. VANDERBILT HOLDING COMPANY, INC.

24  (sued individually and as successor-in-interest to R. T. VANDERBILT COMPANY, INC.);

25  SHELL OIL COMPANY; SHULTON INC. (sued individually and as successor to THE

26  SHULTON GROUP and/or SHULTON, INC.); STANDARD MOTOR PRODUCTS, INC.

27  (sued as successor-in-interest to EIS AUTOMOTIVE); THE ANCHOR; UNION

28  CARBIDE CORPORATION; UNITED TECHNOLOGIES CORPORATION (sued as

1  successor-in-interest to PRATT & WHITNEY);  VANDERBILT MINERALS, LLC (sued
2  as successor-by-merger to R. T. VANDERBILT COMPANY, INC.); WHITTAKER
3  CLARK & DANIELS, INC.; WYETH HOLDINGS LLC f/k/a WYETH HOLDINGS
4  CORPORATION f/k/a AMERICAN CYANAMID COMPANY (sued individually and as
5  successor-in-interest to THE SHULTON GROUP and/or SHULTON INC.);  and DOES 1-
6  450, INCLUSIVE, were individuals, corporations, partnerships and/or unincorporated
7  associations organized and existing under and by virtue of the laws of the State of California,
8  or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of
9  them, were and are authorized to do and are doing business in the State of California, or the
10  laws of some other state or foreign jurisdiction, and that said Defendants, and each of them,
11  were and are authorized to do and are doing business in the State of California, and that said
12  Defendants have regularly conducted business in the County of Los Angeles, State of
13  California.

14       3.    Plaintiffs allege herein that Decedent MICHAEL SCHACKNE developed
15  malignant mesothelioma as a result of exposure to asbestos from Defendants' asbestos,
16  asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos
17  and/or asbestos-containing products, and/or products solely designed to be used with asbestos-
18  containing products ("Defendants' Products"), including 3M COMPANY a/k/a
19  MINNESOTA MINING & MANUFACTURING COMPANY (for asbestos-containing 3M
20  Marine Adhesive); AMERICAN INTERNATIONAL INDUSTRIES INC. (sued
21  individually and as successor-in-interest to THE NESLEMUR COMPANY) (for asbestos-
22  containing Pinaud Clubman Talc); ARKEMA INC. f/k/a PENNWALT CORPORATION (for
23  asbestos-containing Caldesene Talcum Powder); AUTOZONE, INC. (as a supplier of
24  asbestos-containing automotive parts); AUTOZONE WEST, INC. (formerly known as
25  CHIEF AUTO PARTS, INC. for CHIEF AUTO PARTS) (as a supplier of asbestos-
26  containing automotive parts); BAKERS PRIDE OVEN COMPANY, LLC f/k/a BAKERS
27  PRIDE OVEN COMPANY, INC. (for asbestos-containing Bakers Pride Pizza Ovens); BASF
28  CATALYSTS LLC (sued individually and as successor-in-interest to ENGELHARD

CORPORATION and its subsidiary PITA REALTY LIMITED s/b/m EASTERN MAGNESIA TALC COMPANY) (*as a supplier of asbestos-containing talc*); BORG WARNER CORPORATION by its successor-in-interest BORG-WARNER MORSE TEC, INC. (*for Borg-Warner Clutches*); BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) (*as a supplier of asbestos-containing talc*); BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) (*as a supplier of asbestos-containing talc*); CALAVERAS ASBESTOS, LTD (*as a supplier of asbestos fibers*); CHARLES B. CHRYSTAL COMPANY, INC. (*as a supplier of asbestos-containing talc*); CIRRUS ENTERPRISES, LLC (sued individually and as successor-in-interest to E.V. ROBERTS AND ASSOCIATES, INC. and EVRA, INC.) (*as a supplier of asbestos-containing Hysol Adhesives*); COLGATE-PALMOLIVE COMPANY (sued individually and as successor-in-interest to THE MENNEN COMPANY) (*for asbestos-containing Mennen Shave Talc*); CSK AUTO, INC. (sued individually and as successor-by-merger to KRAGEN AUTO SUPPLY CO. and SHUCKS AUTO PARTS) (*as a supplier of asbestos-containing friction products*); CYPRUS AMAX MINERALS COMPANY (sued individually, doing business as, and as successor to METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY) (*as a supplier of asbestos-containing talc*); CYTEC INDUSTRIES, INC. (sued individually and as successor-in-interest to AMERICAN CYANAMID) (*for asbestos-containing aircraft adhesives*); DAP PRODUCTS, INC. (*for DAP Caulk*); EASTERN MAGNESIA TALC COMPANY (*as a supplier of asbestos-containing talc*); FORD MOTOR COMPANY (*for asbestos-containing Ford friction products*); GENUINE PARTS COMPANY a/k/a NAPA (*as a supplier of asbestos-containing friction products*); GEORGIA-PACIFIC LLC f/k/a GEORGIA-PACIFIC CORPORATION (*for Georgia-Pacific Joint Compound*); G. S. BLODGETT CORPORATION (*for asbestos-containing Blodgett Pizza Ovens*); HARCO LLC f/k/a HARCO LABORATORIES, INCORPORATED

9

*(as a supplier of asbestos-containing thermocouples)*; **HENKEL CORPORATION** ·f/k/a **HENKEL LOCTITE CORPORATION** (sued as successor to **PERMATEX COMPANY, INC.** and individually and as successor-in-interest to **DEXTER HYSOL AEROSPACE, INC.**) *(for Permatex Gasket Sealants, Permatex Belt Grips, and aircraft adhesives)*; **HENNESSY INDUSTRIES, INC.** *(for Ammco Arc Grinders)*; **HENRY COMPANY LLC** *(for Henry Roofing Cement)*; **W. W. HENRY COMPANY** *(for Henry Roofing Cement)*; **HOLLEY PERFORMANCE PRODUCTS** *(for Holley Carburetors)*; **HONEYWELL INTERNATIONAL, INC.** f/k/a **ALLIED-SIGNAL, INC.**(sued as successor-in-interest to **BENDIX CORPORATION** and as successor to **STROMBERG CARBURETOR**) *(for Bendix Brakes and Stromberg Carburetors)*; **IMERYS TALC AMERICA, INC.** (sued individually and as successor-in-interest to **LUZENAC AMERICA, INC.** successor-in-interest to **CYPRUS INDUSTRIAL MINERALS COMPANY**) *(as a supplier of asbestos-containing talc)*; **INSIGHT PHARMACEUTICALS CORPORATION**, a subsidiary of **PRESTIGE BRANDS HOLDINGS, INC.** *(for asbestos-containing Caldesene Talcum Powder)*; **INSIGHT PHARMACEUTICALS LLC**, a subsidiary of **PRESTIGE BRANDS HOLDINGS, INC.** *(for asbestos-containing Caldesene Talcum Powder)*; **ITW POLYMERS SEALANTS NORTH AMERICA** a/k/a/ **ITW ENGINEERED POLYMERS NORTH AMERICA** *(for Marine Tex Heavy Duty Plastic Patch)*; **METROPOLITAN LIFE INSURANCE COMPANY** *(as a Conspiracy Defendant)*; **MW CUSTOM PAPERS, LLC** as successor-in-interest to **THE MEAD CORPORATION** *(as a supplier of asbestos-containing friction paper)*; **NOVARTIS PHARMACEUTICALS CORPORATION** (sued individually and as successor-in-interest to **CIBA-GEIGY CORPORATION** and its subsidiary **CIBA CONSUMER PHARMACEUTICALS**) *(for asbestos-containing Caldesene Talcum Powder)*; **O'REILLY AUTO ENTERPRISES LLC** (sued as successor-by-merger to **CSK AUTO, INC.**) *(as a supplier of asbestos-containing friction products)*; **O'REILLY AUTOMOTIVE STORES, INC.** *(as a supplier of asbestos-containing friction products)*; **THE PEP BOYS - MANNY MOE & JACK OF CALIFORNIA** *(as a supplier of asbestos-containing friction products)*; **PFIZER INC.** *(as a supplier of asbestos-containing talc)*; **PITA REALTY LIMITED** (sued

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

1  individually and as successor-in-interest to EASTERN MAGNESIA TALC COMPANY) (*as a*

2  *supplier of asbestos-containing talc*); **PNEUMO ABEX LLC** (sued as successor-in-interest to

3  ABEX CORPORATION) (*as a supplier of Abex Brake Linings*); **PRESTIGE BRANDS**

4  **HOLDINGS, INC.** (*for asbestos-containing Caldesene Talcum Powder*); **THE PROCTER**

5  **& GAMBLE COMPANY** (sued individually and as successor-in-interest to THE SHULTON

6  GROUP and/or SHULTON INC.) (*for asbestos-containing Old Spice Talcum Powder*); **R. T.**

7  **VANDERBILT HOLDING COMPANY, INC.** (sued individually and as successor-in-

8  interest to R. T. VANDERBILT COMPANY, INC.) (*as a supplier of asbestos-containing*

9  *talc*); **SHELL OIL COMPANY** (*for asbestos-containing aircraft adhesive*); **SHULTON**

10  **INC.** (sued individually and as successor to THE SHULTON GROUP and/or SHULTON,

11  INC.) (*for asbestos-containing Old Spice Talcum Powder*); **STANDARD MOTOR**

12  **PRODUCTS, INC.** (sued as successor-in-interest to EIS AUTOMOTIVE) (*for EIS Brakes*);

13  **THE ANCHOR** (*as a supplier of asbestos-containing watercraft products*); **UNION**

14  **CARBIDE CORPORATION** (*as a supplier of asbestos fibers*); **UNITED**

15  **TECHNOLOGIES CORPORATION** (sued as successor-in-interest to PRATT &

16  WHITNEY) (*for asbestos-containing Pratt & Whitney Aircraft Engines*); **VANDERBILT**

17  **MINERALS, LLC** (sued as successor-by-merger to R. T. VANDERBILT COMPANY, INC.)

18  (*as a supplier of asbestos-containing talc*); **WHITTAKER CLARK & DANIELS, INC.** (*as*

19  *a supplier of asbestos-containing talc*); and **WYETH HOLDINGS LLC** f/k/a WYETH

20  HOLDINGS CORPORATION f/k/a AMERICAN CYANAMID COMPANY (sued

21  individually and as successor-in-interest to THE SHULTON GROUP and/or SHULTON

22  INC.) (*for asbestos-containing Old Spice Talcum Powder and as a supplier of asbestos-*

23  *containing talc*).

## FIRST CAUSE OF ACTION

24

25  (Negligence)

26  PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION

27  FOR NEGLIGENCE ALLEGE AS FOLLOWS:

28  4.   Plaintiffs incorporate herein by reference, as though fully set forth therein, the

11

1 | general allegations set forth above.

2 |     5.    At all times herein mentioned, each of the named Defendants and DOES 1
3 | through 450 was the successor, successor in business, successor in product line or a portion
4 | thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or
5 | member in an entity researching, studying, manufacturing, fabricating, designing, modifying,
6 | labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling,
7 | inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting,
8 | re-branding, manufacturing for others, packaging and advertising asbestos and products
9 | containing asbestos, and/or products designed to cut, saw, or otherwise manipulate, and/or
10 | equipment solely designed to be used with asbestos-containing products including, but not
11 | limited to, those products identified in paragraph 3 above.  Said entities shall hereinafter
12 | collectively be called "alternate entities." Each of the herein named Defendants is liable for
13 | the tortious conduct of each successor, successor in business, successor in product line or a
14 | portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary,
15 | whole or partial owner, or wholly or partially owned entity, or entity that it was a member of,
16 | or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for
17 | others and advertised asbestos, and asbestos products, and/or products designed to cut, saw, or
18 | otherwise manipulate, and/or equipment solely designed to be used with asbestos-containing
19 | products.  The following Defendants, and each of them, are liable for the acts of each and
20 | every "alternate entity", and each of them, in that there has been a virtual destruction of
21 | Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have
22 | acquired the assets, product line, or a portion thereof, of each such "alternate entity";
23 | Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each
24 | such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role
25 | of each such "alternate entity"; and that each such Defendant enjoys the goodwill originally
26 | attached to each such "alternate entity".

| DEFENDANT | ALTERNATE ENTITY |
| --- | --- |
| 3M COMPANY | MINNESOTA MINING AND MANUFACTURING |

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

| | |
|---|---|
| ARKEMA, INC. | PENNWALT CORPORATION |
| AMERICAN INTERNATIONAL INDUSTRIES INC. | THE NESLEMUR COMPANY |
| AUTOZONE WEST, INC. | CHIEF AUTO PARTS, INC.<br>CHIEF AUTO PARTS |
| BAKERS PRIDE OVEN COMPANY, LLC | BAKERS PRIDE OVEN COMPANY, INC. |
| BASF CATALYSTS LLC | ENGELHARD CORPORATION<br>PITA REALTY LIMITED<br>EASTERN MAGNESIA TALC COMPANY |
| BORG WARNER CORPORATION | BORG-WARNER MORSE TEC, INC. |
| BRENNTAG NORTH AMERICA, INC. | MINERAL PIGMENT SOLUTIONS, INC.<br>WHITTAKER, CLARK & DANIELS, INC. |
| BRENNTAG SPECIALTIES, INC. | MINERAL PIGMENT SOLUTIONS, INC.<br>WHITTAKER, CLARK & DANIELS, INC. |
| CIRRUS ENTERPRISES, LLC | E. V. ROBERTS AND ASSOCIATES, INC.<br>EVRA, INC. |
| COLGATE-PALMOLIVE COMPANY | THE MENNEN COMPANY |
| CSK AUTO, INC. | AL'S AND GRAND AUTO SUPPLY, INC.<br>CHECKER AUTO PARTS, INC.<br>CHECKER AUTO SUPPLY<br>FASTLANE MERGER, LLC<br>KRAGEN AUTO SUPPLY CO.<br>M&O AUTO PARTS & EQUIPMENT,<br>INC.NORTHERN AUTOMOTIVE<br>CORPORATION<br>SCHUCK'S DISTRIBUTION CO.<br>TRK SOCIAL, INC. |
| CYPRUS AMAX MINERALS COMPANY | SIERRA TALC COMPANY<br>UNITED TALC COMPANY<br>METROPOLITAN TALC CO. INC.<br>CHARLES MATHIEU INC. |
| CYTEC INDUSTRIES, INC. | AMERICAN CYANAMID |
| FORD MOTOR COMPANY | MOTORCRAFT |
| GENUINE PARTS COMPANY | NAPA<br>RAYLOC BRAKES |
| GEORGIA-PACIFIC LLC | GEORGIA-PACIFIC CORPORATION<br>BESTWALL GYPSUM COMPANY<br>GEORGIA-PACIFIC RESINS, INC.<br>GEORGIA-PACIFIC WEST, INC. |

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

| | |
|---|---|
| HARCO LLC | HARCO LABORATORIES, INCORPORATED |
| HENKEL CORPORATION | PERMATEX COMPANY, INC. HENKEL LOCTITE CORPORATION DEXTER HYSOL AEROSPACE, INC. |
| HONEYWELL INTERNATIONAL, INC. | ALLIED SIGNAL, INC. BENDIX CORPORATION STROMBERG CARBURETOR |
| IMERYS TALC AMERICA, INC. | LUZENAC AMERICA, INC. CYPRUS INDUSTRIAL MINERALS COMPANY |
| INSIGHT PHARMACEUTICALS CORPORATION | PRESTIGE BRANDS HOLDINGS, INC |
| INSIGHT PHARMACEUTICALS LLC | PRESTIGE BRANDS HOLDINGS, INC. |
| ITW POLYMERS SEALANTS NORTH NORTHAMERICA AMERICA | ITW ENGINEERED POLYMERS NORTH AMERICA |
| MW CUSTOM PAPERS, LLC | THE MEAD CORPORATION |
| NOVARTIS PHARMACEUTICALS CORPORATION | CIBA-GEIGY CORPORATION CIBA CONSUMER PHARMACEUTICALS |
| O'REILLY AUTO ENTERPRISES LLC | CSK AUTO, INC. |
| THE PEP BOYS MANNY MOE & JACK OF CALIFORMIA | MMJ CORPORATION PEP PROPERTIES, INC. |
| PITA REALTY LIMITED | EASTERN MAGNESIA TALC COMPANY |
| PNEUMO ABEX CORPORATION | ABEX CORPORATION |
| THE PROCTER & GAMBLE COMPANY | THE SHULTON GROUP SHULTON INC. |
| R. T. VANDERBILT HOLDING COMPANY, INC. | R. T. VANDERBILT COMPANY, INC. |
| SHULTON INC. | THE SHULTON GROUP |
| STANDARD MOTOR PRODUCTS, INC. | EIS AUTOMOTIVE |
| UNION CARBIDE CORPORATION | THE DOW CHEMICAL COMPANY UNION CARBIDE CHEMICALS AND PLASTICS COMPANY, INC. UNION CARBIDE AND CARBON CORPORATION LINDE AIR PRODUCTS COMPANY NATIONAL CARBON CO., INC. |

14

| | |
|---|---|
| 1 | PREST-O-LITE CO., INC. |
| | UNION CARBIDE COMPANY |
| 2 | CARBIDE AND CARBON CHEMICALS |
| | CORPORATION |
| 3 | BAKELITE COROPORATION |
| | UNION CARBIDE CONSUMER |
| 4 | PRODUCTS CO. |
| | UNION CARBIDE MINING AND METALS |
| 5 | DIVISION |
| | UNION CARBIDE ELECTRONICS |
| 6 | DIVISION |
| | UNION CARBIDE HYDROCARBONS |
| 7 | DIVISION |
| | UNION CARBIDE FERROALLOYS |
| 8 | DIVISION |
| | JENNAT CORPORATION |
| 9 | AMERCHOL CORPORATION |
| | UOP |
| 10 | UCAR CARBON COMPANY |
| | UNION CARBIDE INDUSTRIAL GASES |
| 11 | INC. |
| | PRAXAIR, INC. |
| 12 | POLIMERI EUROPA S.r.l. |
| | ASIAN ACETYLS COMPANY, LTD. |
| 13 | EQUATE PETROCHEMICAL COMPANY |
| 14 | UNITED TECHNOLOGIES CORPORATION   PRATT & WHITNEY |
| 15 | VANDERBILT MINERALS, LLC         R. T. VANDERBILT COMPANY, INC. |
| 16 | WYETH HOLDINGS LLC              WYETH HOLDINGS CORPORATION |
| 17 |                                 AMERICAN CYANAMID COMPANY |
| |                                 THE SHULTON GROUP |
| 18 |                                 SHULTON, INC. |

6.      At all times herein mentioned, Defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos products, and/or products designed to cut, saw, or otherwise manipulate, and/or equipment solely designed to be used with asbestos-containing products, (hereinafter Defendants' Products). **FORD MOTOR COMPANY** specifically designed its braking systems for asbestos-containing brake linings such that no other material could be utilized as brake linings in those systems.

7.      At all times herein mentioned, Defendants, their "alternate entities", and each of

1  them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated,
2  specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed
3  to warn of the health hazards, labeled, assembled, distributed, leased, bought, rented, offered
4  for sale, supplied, sold, inspected, serviced, installed, contracted for installation, failed to
5  recall, failed to retrofit, repaired, marketed, warranted, re-branded, manufactured for others,
6  packaged, and advertised Defendants' Products including, but not limited to, those products
7  identified in paragraph 3 above, in that the Defendants' Products were unreasonably dangerous
8  because they released respirable asbestos fibers which resulted in personal injuries to users,
9  consumers, workers, bystanders, and others, including Plaintiffs' Decedent MICHAEL
10  SCHACKNE herein (hereinafter collectively called "exposed persons"). Said products were
11  used at all times in a manner that was reasonably foreseeable to Defendants, their "alternate
12  entities", and each of them, thereby rendering said products unsafe and dangerous for use by
13  "exposed persons". Plaintiffs herein allege that Decedent MICHAEL SCHACKNE'S
14  exposures to Defendants' Products including, but not limited to, those products identified in
15  paragraph 3 above (hereinafter referred to as "Defendants' products" or "Defendants' asbestos
16  and asbestos-containing products, and/or equipment solely designed to be used with asbestos-
17  containing products"), were a substantial contributing factor in the development of his
18  mesothelioma, and his death on October 24, 2015, and therefore proximately caused Plaintiffs'
19  Decedent's injuries and death.

20      8.    Defendants, their "alternate entities", and each of them, had a duty to exercise
21  reasonable care while engaging in the activities mentioned above and each Defendant
22  breached said duty of reasonable care in that Defendants, and each of them, failed to safely
23  and adequately design, manufacture and/or sell Defendants' Products; failed to test said
24  products; failed to investigate the hazards of said products; failed to warn "exposed persons",
25  including Plaintiffs' Decedent MICHAEL SCHACKNE, of the health hazards of using
26  Defendants' Products; failed to disclose the known or knowable dangers of using Defendants'
27  Products; failed to warn of the harmful exposures caused by use of said products to cut, saw,
28  or otherwise manipulate asbestos-containing products; failed to obtain suitable alternative

1   materials to asbestos when such alternatives were available; failed to recall or retrofit products
2   after sale of Defendants' and as otherwise stated herein.

3        9.     The Defendants' Products were and are hazardous to the health and safety of
4   Plaintiffs' Decedent, and others in Plaintiffs' Decedent's position working with, personally
5   using, and in close proximity to such products, and since on or before 1930, the hazards and
6   dangerous propensities of the Defendants' Products were both known and knowable to the
7   Defendants, their "alternate entities", and each of them, through the use of medical and/or
8   scientific data and other knowledge available to Defendants, their "alternate entities", and each
9   of them at the time of Defendants' manufacture, distribution, sale, research, study, fabrication,
10  design, modification, labeling, assembly, leasing, buying, offering for sale, supply, inspection,
11  service, installation, contracting for installation, repair, marketing, warranting, re-branding, re-
12  manufacturing for others, packaging and advertising, of those products, which clearly
13  indicated the hazards and dangerous propensities of asbestos presented a substantial danger to
14  users, including Plaintiffs' Decedent MICHAEL SCHACKNE, of Defendants' Products
15  through the intended and reasonably foreseeable use of those products.

16       10.    Defendants, their "alternate entities", and each of them, knew, or reasonably
17  should have known, that Defendants' Products were dangerous and were likely to be
18  dangerous when used in their intended and reasonably foreseeable manner.

19       11.    Defendants, their "alternate entities", and each of them, knew, or reasonably
20  should have known, that Defendants' Products would be installed, repaired, maintained,
21  overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken,
22  "ripped out" and/or used to cut, saw, grind, or otherwise manipulate products containing
23  asbestos, or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the
24  release of airborne hazardous and dangerous asbestos fibers, and that through such activity,
25  "exposed persons," including Plaintiffs' Decedent MICHAEL SCHACKNE herein, would be
26  exposed to said hazardous and dangerous asbestos fibers. Defendants, their "alternate
27  entities", and each of them, knew or reasonably should have known that users, such as
28  Plaintiffs' Decedent MICHAEL SCHACKNE and others in his position, working with,

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

1  personally using, and in close proximity to Defendants' Products would not realize or know
2  the danger.  Defendants, their "alternate entities", and each of them negligently failed to
3  adequately warn or instruct of the dangers of the products.  A reasonable designer,
4  manufacturer, distributor, seller, installer, buyer or supplier, under the same or similar
5  circumstances, would have warned of the dangers to avoid exposing others to a foreseeable
6  risk of harm.  The negligent failure of Defendants, their "alternate entities", and each of them
7  to warn was a substantial factor in causing harm to Plaintiffs' Decedent MICHAEL
8  SCHACKNE, proximately resulting in his death on October 24, 2015, the nature of which is
9  set forth in Exhibit "B", which is attached hereto and incorporated by reference herein.

10      12.   Plaintiffs' Decedent MICHAEL SCHACKNE used, handled, or was otherwise
11  exposed to Defendants' Products referred to herein in a manner that was reasonably
12  foreseeable to Defendants and each of them.  Plaintiffs' Decedent's exposure to Defendants'
13  Products occurred at various locations set forth in Exhibit "A", which is attached hereto and
14  incorporated by reference herein.

15      13.   As a direct and proximate result of the conduct of the Defendants, their
16  "alternate entities", and each of them, as aforesaid, Plaintiffs' Decedent MICHAEL
17  SCHACKNE'S exposure to Defendants' Products caused severe and permanent injury and
18  death to the Decedent, the nature of which, along with the date of Decedent's diagnosis and
19  the date he learned such injuries were attributable to exposure to Defendants' Products, are set
20  forth in Exhibit "B", which is attached hereto and incorporated by reference herein.  Plaintiffs
21  is informed and believes, and thereon alleges, that progressive lung disease, cancer and other
22  serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that
23  said disease results from exposure to Defendants' Products over a period of time.

24      14.   Plaintiffs' Decedent MICHAEL SCHACKNE suffered from malignant
25  mesothelioma, caused by exposure to asbestos from Defendants' Products, including those
26  products identified in paragraph 3 above.  Plaintiffs' Decedent MICHAEL SCHACKNE was
27  not aware at the time of exposure that Defendants' Products presented any risk of injury and/or
28  disease.

15.    As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities", and each of them, Plaintiffs' Decedent MICHAEL SCHACKNE suffered permanent injuries to his person, body and health, including, but not limited to, pain, discomfort, loss of weight, loss of appetite, fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and emotional distress attendant thereto, as Decedent's malignant mesothelioma progressed, from the effect of exposure to asbestos fibers, proximately resulting in his death on October 24, 2015, all to Plaintiffs' general damage in a sum in excess of the jurisdictional limit of a limited civil case.

16.    As a direct and proximate result of the aforesaid conduct of the Defendants, their "alternate entities", and each of them, Plaintiffs' Decedent MICHAEL SCHACKNE incurred, and Plaintiffs continue to incur, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

17.    As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities", and each of them, Plaintiffs have incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, funeral and burial expenses, and other pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.  As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities", and each of them, Plaintiffs have been, and in the future will be, deprived of the support, society, solace, care, comfort, companionship, affection, advice, services and guidance of Decedent MICHAEL SCHACKNE, the full nature and extent of which are not yet known to Plaintiffs and leave is requested to amend this complaint to conform to proof at the time of trial.

18.    Plaintiffs further allege that Defendants, their "alternate entities", and each of them, also engaged in the following wrongful acts which support Plaintiffs' prayer for punitive damages:

(a)    Defendants, their "alternate entities", and each of them, suppressed from all consumers, including Plaintiffs' Decedent MICHAEL SCHACKNE, medical and scientific

1   information concerning the health hazards associated with inhalation of asbestos, including the

2   substantial risk of injury or death therefrom.  Although Defendants, and each of them, knew of

3   the substantial risks associated with exposure to asbestos, they willfully and knowingly

4   concealed such information from the users of their asbestos and/or asbestos-containing

5   products in conscious disregard of the rights, safety and welfare of "exposed persons",

6   including Plaintiffs' Decedent MICHAEL SCHACKNE;

7        (b)    Defendants, their "alternate entities", and each of them, belonged to, participated

8   in, and financially supported industry organizations including, but not limited to, the Cosmetic

9   Toiletry and Fragrance Association (now Personal Care Products Council), the Gypsum

10  Association, Asbestos Information Association, Industrial Hygiene Foundation and others,

11  which, for and on behalf of Defendants, their "alternate entities", and each of them, actively

12  promoted the suppression of information about the dangers of asbestos to users of the

13  aforementioned products and materials, thereby misleading Plaintiffs' Decedent MICHAEL

14  SCHACKNE as to the safety of their products.  Through their participation and association

15  with such industry organizations, Defendants and each of them knowingly and deliberately

16  concealed and suppressed the true information regarding asbestos and its dangers, and

17  propagated misinformation intended to instill in users of Defendants' Products a false security

18  about the safety of their products.  The Dust Control Committee, which changed its name to

19  the Air Hygiene Committee of the Asbestos Textile Institute, was specifically enlisted to study

20  the subject of dust control.  Discussions in this committee were held many times regarding the

21  dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and

22  such information was suppressed from public dissemination from 1946 to a date unknown to

23  Plaintiffs' Decedent MICHAEL SCHACKNE;

24       (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos and

25  Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan

26  plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and

27  each of them, knew and possessed medical and scientific information of the connection

28  between the inhalation of asbestos fibers and asbestosis, which information was disseminated

1    through the Asbestos Textile Institute and other industry organizations to all other Defendants,

2    their "alternate entities", and each of them, herein.  Between 1942 and 1950, the Defendants,

3    their "alternate entities", and each of them, failed to provide this information to consumers;

4          (d)    Defendants, their "alternate entities", and each of them, failed to warn Plaintiffs'

5    Decedent MICHAEL SCHACKNE and others of the nature of said materials which were

6    dangerous when breathed and which could cause pathological effects without noticeable

7    trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed

8    knowledge and were under a duty to disclose that said materials were dangerous and a threat to

9    the health of persons coming into contact therewith;

10         (e)    Defendants, their "alternate entities", and each of them, failed to provide

11   Plaintiffs' Decedent MICHAEL SCHACKNE with information concerning adequate

12   protective masks and other equipment devised to be used when applying, mixing, cutting,

13   installing, sanding, and personally using the products of the Defendants, their "alternate

14   entities", and each of them, despite knowing that such protective measures were necessary,

15   and that they were under a duty to disclose that such materials were dangerous and would

16   result in injury to Plaintiffs' Decedent MICHAEL SCHACKNE and others applying, installing

17   and personally using such material;

18         (f)    Defendants, their "alternate entities", and each of them, knew and failed to

19   disclose that Plaintiffs' Decedent MICHAEL SCHACKNE and anyone similarly situated,

20   upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible

21   conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

22         (g)    Defendants, their "alternate entities", and each of them, failed to provide

23   information of the true nature of the hazards of asbestos materials and that exposure to these

24   material would cause pathological effects without noticeable trauma to the public, including

25   buyers, users, and physicians employed by Plaintiffs' Decedent MICHAEL SCHACKNE so

26   that said physicians could not examine, diagnose, and treat Decedent and others who were

27   exposed to asbestos, despite the fact that Defendants, their "alternate entities", and each of

28   them, were under a duty to so inform and said failure was misleading.

21

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

19.     Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of them, and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

20.     The herein-described conduct of said Defendants, their "alternate entities", and each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons," including Plaintiffs' Decedent MICHAEL SCHACKNE, in that Defendants, and each of them, continued to manufacture, market and/or sell dangerous asbestos, asbestos-containing products and/or equipment, and/or equipment solely designed for use with asbestos-containing products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products and/or equipment, in order to continue to profit financially therefrom. Defendants, their "alternate entities", and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

21.     Defendants and each of them engaged in the malicious conduct described herein which was intended by Defendants and each of them to cause injury to the Decedent, and despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of others, including Plaintiffs' Decedent MICHAEL SCHACKNE.

22.     Defendants, and each of them, engaged in oppressive conduct described herein which was despicable conduct that subjected persons, including Plaintiffs' Decedent

1  MICHAEL SCHACKNE, to cruel and unjust hardship in the form of severe, debilitating and

2  fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those

3  persons' rights.

4      23.  As a direct and proximate result of such intentional conduct by Defendants, their

5  "alternate entities" and each of them, Plaintiffs' Decedent MICHAEL SCHACKNE sustained

6  the injuries and damages alleged herein.

7      WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate

8  entities", and each of them, as hereinafter set forth.

9  <u>SECOND CAUSE OF ACTION</u>

10  (Strict Liability)

11      AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF

12  ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES

13  1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS
FOLLOWS:

14      24.  Plaintiffs incorporate herein by reference, as though fully set forth therein, each

15  and every one of the general allegations and the allegations contained in the First Cause of

16  Action herein.

17      25.  Defendants, their "alternate entities", and each of them, sold the aforementioned

18  Defendants' Products, which were defective in that they failed to adequately warn or instruct

19  of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of

20  their products, which dangers and risks would not have been, and were not, recognized by

21  ordinary consumers of the products, including Plaintiffs' Decedent MICHAEL SCHACKNE,

22  and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm

23  to Plaintiffs' Decedent MICHAEL SCHACKNE and others in Plaintiffs' Decedent's position

24  working with, personally using, and in close proximity to such products.

25      26.  Defendants' Products were defective and unsafe for their intended purpose and

26  foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled,

27  removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out"

28  and/or used to cut, saw, grind, or otherwise manipulate products containing asbestos, or

1  otherwise disturbed, said products would result in the release, and therefore inhalation of,

2  hazardous and dangerous asbestos fibers by exposed persons, including Plaintiffs' Decedent

3  MICHAEL SCHACKNE.  The defect existed in all of said products when they left the

4  possession of the Defendants, their "alternate entities", and each of them.  At the time

5  Defendants' Products were used by Plaintiffs' Decedent, and others in Plaintiffs' Decedent's

6  position working with, personally using, and in close proximity to such products, the products

7  were substantially the same as when they left the possession of the Defendants, their "alternate

8  entities", and each of them and/or any changes made to the products after they left the

9  possession of Defendants, their "alternate entities", and each of them were reasonably

10 foreseeable to Defendants, their "alternate entities", and each of them.  Defendants' Products

11 were used by Plaintiffs' Decedent MICHAEL SCHACKNE, and others in Plaintiffs'

12 Decedent's position working with, personally using, and in close proximity to such products,

13 in a way that was reasonably foreseeable to Defendants, and each of them.  The defect in said

14 products was a substantial factor in causing harm and personal injuries to Plaintiffs' Decedent

15 MICHAEL SCHACKNE, including malignant mesothelioma, while being used in a

16 reasonably foreseeable manner, thereby rendering said products defective, unsafe, and

17 unreasonably dangerous for their ordinary and intended use.

18     27.    As a direct and proximate result of the actions and conduct outlined herein,

19 Defendants' Products were defective in that they failed to perform as safely as an ordinary

20 consumer would have expected in that Defendants' Products, and each of them, cause

21 respirable asbestos fibers to be released during their ordinary and intended use, and such

22 hazardous exposures lacked any perceptible qualities to the human body, yet they cause severe

23 and fatal diseases, including asbestosis, lung cancer, mesothelioma and other cancers in

24 humans.  Plaintiffs further allege that "exposed persons", including Plaintiffs' Decedent

25 MICHAEL SCHACKNE, were unaware of the harmful effects of asbestos and further

26 unaware of the harmful exposures to Defendants' Products when such exposures occurred, and

27 thus the failure of Defendants' Products to perform as safely as Plaintiffs' Decedent

28 MICHAEL SCHACKNE had reason to expect was a substantial factor in causing his injuries.

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

1  Moreover, Defendants' Products were also defective in their design under the "risk/benefit
2  test" of design defect because the risks of said products outweighed their benefits.

3      28.    As a direct and proximate result of the actions and conduct outlined herein,
4  Plaintiffs' Decedent MICHAEL SCHACKNE has suffered the injuries and damages alleged
5  herein.

6      29.    Plaintiffs further allege that Defendants, their "alternate entities", and each of
7  them, also engaged in the following wrongful acts:

8      (a)    Defendants, their "alternate entities", and each of them, suppressed from all
9  consumers, including Plaintiffs' Decedent MICHAEL SCHACKNE, medical and scientific
10 information concerning the health hazards associated with inhalation of asbestos, including the
11 substantial risk of injury or death therefrom. Although Defendants, and each of them, knew of
12 the substantial risks associated with exposure to asbestos, they willfully and knowingly
13 concealed such information from the users of their asbestos, and/or asbestos-containing
14 products, and/or equipment solely designed to be used with asbestos-containing products in
15 conscious disregard of the rights, safety and welfare of "exposed persons", including
16 Plaintiffs' Decedent MICHAEL SCHACKNE;

17     (b)    Defendants, their "alternate entities", and each of them, belonged to, participated
18 in, and financially supported industry organizations including, but not limited to, the Cosmetic
19 Toiletry and Fragrance Association (now Personal Care Products Council), the Gypsum
20 Association, Asbestos Information Association, Industrial Hygiene Foundation and others,
21 which, for and on behalf of Defendants, their "alternate entities", and each of them, actively
22 promoted the suppression of information about the dangers of asbestos to users of the
23 aforementioned products, materials, and/or equipment solely designed for use with asbestos-
24 containing products, thereby misleading Plaintiffs' Decedent MICHAEL SCHACKNE as to
25 the safety of their products and/or equipment. Through their participation and association with
26 such industry organizations, Defendants and each of them knowingly and deliberately
27 concealed and suppressed the true information regarding asbestos and its dangers, and
28 propagated misinformation intended to instill in users of Defendants' Products a false security

1  about the safety of their products.  The Dust Control Committee, which changed its name to
2  the Air Hygiene Committee of the Asbestos Textile Institute, was specifically enlisted to study
3  the subject of dust control.  Discussions in this committee were held many times regarding the
4  dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and
5  such information was suppressed from public dissemination from 1946 to a date unknown to
6  Plaintiffs at this time;

7      (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos and
8  Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan
9  plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and
10  each of them, knew and possessed medical and scientific information of the connection
11  between the inhalation of asbestos fibers and asbestosis, which information was disseminated
12  through the Asbestos Textile Institute and other industry organizations to all other Defendants,
13  their "alternate entities", and each of them, herein.  Between 1942 and 1950, the Defendants,
14  their "alternate entities", and each of them, failed to provide this information to consumers;

15     (d)    Defendants, their "alternate entities", and each of them, failed to warn Plaintiffs'
16  Decedent MICHAEL SCHACKNE and others of the nature of said materials which were
17  dangerous when breathed and which could cause pathological effects without noticeable
18  trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed
19  knowledge and were under a duty to disclose that said materials were dangerous and a threat to
20  the health of persons coming into contact therewith;

21     (e)    Defendants, their "alternate entities", and each of them, failed to provide
22  Plaintiffs' Decedent MICHAEL SCHACKNE with information concerning adequate
23  protective masks and other equipment devised to be used when applying, mixing, sawing,
24  cutting, installing, sanding, and personally using the products of the Defendants, their
25  "alternate entities", and each of them, despite knowing that such protective measures were
26  necessary, and that they were under a duty to disclose that such materials were dangerous and
27  would result in injury to Plaintiffs' Decedent MICHAEL SCHACKNE and others applying,
28  installing and personally using such materials;

1   (f)   Defendants, their "alternate entities", and each of them, knew and failed to

2   disclose that Plaintiffs' Decedent MICHAEL SCHACKNE and anyone similarly situated,

3   upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible

4   conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

5   (g)   Defendants, their "alternate entities", and each of them, failed to provide

6   information of the true nature of the hazards of asbestos materials and that exposure to these

7   material would cause pathological effects without noticeable trauma to the public, including

8   buyers, users, and physicians employed by Plaintiffs' Decedent MICHAEL SCHACKNE, so

9   that said physicians could not examine, diagnose, and treat Plaintiffs' Decedent and others

10   who were exposed to asbestos, despite the fact that Defendants, their "alternate entities", and

11   each of them, were under a duty to so inform and said failure was misleading.

12   30.   Defendants, their "alternate entities", and each of them, and their officers,

13   directors, and managing agents participated in, authorized, expressly and impliedly ratified,

14   and had full knowledge of, or should have known of, each of the acts set forth herein.

15   Defendants, their "alternate entities", and each of them, are liable for the oppressive and

16   malicious acts of their "alternate entities", and each of them, and each Defendant's officers,

17   directors, and managing agents participated in, authorized, expressly and impliedly ratified,

18   and had full knowledge of, or should have known of, the acts of each of their "alternate

19   entities" as set forth herein.

20   31.   The herein-described conduct of said Defendants, their "alternate entities", and

21   each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard

22   and indifference to the safety and health of "exposed persons," including Plaintiffs' Decedent

23   MICHAEL SCHACKNE, in that Defendants, and each of them, continued to manufacture,

24   market and/or sell dangerous products known to cause severe, permanent injuries and death,

25   despite possessing knowledge of the substantial hazards posed by use of their products, in

26   order to continue to profit financially therefrom.   Defendants, their "alternate entities", and

27   each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable,

28   wretched and loathsome as to be looked down upon and despised by ordinary people and

27

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

1  justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294.

2  Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive

3  damages according to proof.

4      32.   Defendants and each of them engaged in conduct which was intended by

5  Defendants, and each of them, to cause injury to the Decedent, and despicable conduct which

6  was carried on by the Defendants with a willful and conscious disregard of the rights or safety

7  of others, including Plaintiffs' Decedent MICHAEL SCHACKNE.

8      33.   Defendants, and each of them, engaged in the dispicable conduct described

9  herein that subjected persons, including Plaintiffs' Decedent MICHAEL SCHACKNE, to

10  cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis,

11  lung cancer and mesothelioma, in conscious disregard of those persons' rights.

12      34.   As a direct and proximate result of such intentional conduct by Defendants, their

13  "alternate entities" and each of them, Plaintiffs' Decedent MICHAEL SCHACKNE sustained

14  the injuries and damages alleged herein.

15

16  ### THIRD CAUSE OF ACTION

17  (Conspiracy)

18  AS AND FOR A FURTHER THIRD SEPARATE, AND DISTINCT CAUSE OF ACTION FOR CONSPIRACY, PLAINTIFFS COMPLAIN OF DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY, AND DOES 1-450, THEIR

19  "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

20      35.   Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered

21  substantial aid and assistance to the manufacturers of asbestos-containing products to which

22  Plaintiffs' Decedent MICHAEL SCHACKNE was exposed, and such assistance by

23  Metropolitan Life aided and abetted the negligence and the marketing of unreasonably

24  dangerous asbestos-containing products by such manufacturers which proximately caused

25  Plaintiffs' Decedent MICHAEL SCHACKNE's illness, injuries, disabilities and ultimate

26  death.

27      36.   In both conducting tests and in publishing their alleged results,

28  METROPOLITAN LIFE failed to exercise reasonable care to conduct or publish complete,

1  adequate and accurate tests of the health effects of asbestos.  **METROPOLITAN LIFE** also

2  caused to be published intentionally false, misleading, inaccurate and deceptive information

3  about the health effects of asbestos exposure.

4       37.    Plaintiffs' Decedent MICHAEL SCHACKNE unwittingly but justifiably relied

5  upon the thoroughness of **METROPOLITAN LIFE**'s tests and information dissemination,

6  the results of which Metropolitan Life published in leading medical journals.

7       38.    As a direct and proximate contributing result of **METROPOLITAN LIFE**'s

8  failures to conduct or accurately publish adequate tests or disseminate accurate and truthful

9  information, after undertaking to do so; (i) the risk of harm to Plaintiffs' Decedent MICHAEL

10  SCHACKNE from asbestos exposure was increased, and (ii) Plaintiffs' Decedent MICHAEL

11  SCHACKNE suffered the injuries described below.

12       39.    In failing to test fully and adequately for the adverse health effects from

13  exposure to asbestos; in delaying the publication of such results; and in falsely editing such

14  results as were obtained; in suppressing relevant medical inquiry and knowledge about those

15  hazards to promote the sale and distribution of asbestos as a harmless product; and in

16  collaborating with the other Defendants materially to understate the hazards of asbestos

17  exposure, all for its own profit and gain, **METROPOLITAN LIFE** acted recklessly,

18  wantonly, and in calculated disregard for the welfare of the general public, including

19  Plaintiffs' Decedent MICHAEL SCHACKNE.

20      40.    WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate

21  entities", and each of them, in an amount to be proved at trial in each individual case, as follows:

22         Decedent MICHAEL SCHACKNE, by and through his personal representative,

23         KATHRYN SCHACKNE, pursuant to C.C.P. section 377.30, et seq.:

24         1.    For DECEDENT's medical and related expenses according to proof;

25         2.    For DECEDENT's loss of income and income potential;

26         3.    For exemplary or punitive damages according to proof;

27

28

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**

KATHRYN SCHACKNE, KYLEE STEPNER, and KACIN SCHACKNE, pursuant to C.C.P. section 377.60. et seq.:

4.     For PLAINTIFFS' medical and related expenses according to proof;

5.     For PLAINTIFFS' loss of income and income potential caused by DECEDENT's death, and for PLAINTIFFS' loss of DECEDENT's financial support and financial contributions;

6.     For funeral and burial expenses caused by DECEDENT's death;

7.     For PLAINTIFFS' general damages according to proof, including damages for loss of love, companionship, comfort, affection, solace, moral support and/or society according to proof caused by DECEDENT's death;

8.     For exemplary or punitive damages according to proof;

FOR ALL PLAINTIFFS:

9.     For Plaintiffs' cost of suit herein;

10.     For exemplary or punitive damages according to proof;

11.     For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032 and related provisions of law.

DATED: October 21, 2016     SIMON GREENSTONE PANATIER BARTLETT, P.C.

By: _Jennifer L. Bartlett_

Jennifer L. Bartlett
Jordan Blumenfeld-James

and
JOHN M. CARON, CA Bar No. 130633
LAW OFFICE OF WORTHINGTON & CARON, P. C.
273 W. 7th Street
San Pedro, California 90731
Telephone (310) 221-8090
Facsimile (310) 221-8095

Attorneys for Plaintiffs

COMPLAINT FOR WRONGFUL DEATH – ASBESTOS

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues so triable.

DATED: October 21, 2016          **SIMON GREENSTONE PANATIER BARTLETT, PC**

By: _____

Jennifer L. Bartlett
Jordan Blumenfeld-James

and

JOHN M. CARON, CA Bar No. 130633
**LAW OFFICE OF WORTHINGTON & CARON, P. C.**
273 W. 7th Street
San Pedro, California 90731
Telephone (310) 221-8090
Facsimile (310) 221-8095

Attorneys for Plaintiffs

31

**COMPLAINT FOR WRONGFUL DEATH – ASBESTOS**