K

P.O. Box 8317 Chicago, IL 60680-8317

Danna George PCLS
Claims Consultant
CNA Insurance
Phone 1-617-994-4324
Fax 1-877-371-5122

April 11, 2018

Tee Noland
PTI DBA Pharma Tech
125 W Washington Street
Athens, Georgia 30601-2725

    **Re:**    **The Talc Actions**
             Claim No.:    HMA45749
             Insureds:     PTI dba Pharma-Tech Industries, PTI Union, LLC dba Pharma Tech Industries and PTI Royston, LLC dba Pharma Tech Industries
             Claimants:    Various
             Policy No.:    ADT-4016003473
             Policy Period: June 8, 2017 to June 8, 2018
             Issuing Company:    Continental Casualty Company

Dear Mr. Noland:

This letter supplements our prior correspondence and communications with respect to various lawsuits alleging ovarian cancer and asbestos-related cancers, including mesothelioma, caused by products containing talc, and subpoenas duces tecum received by PTI related to talc products, as well as document requests from various talc manufacturers. The purpose of this letter is to provide you with the supplemental coverage position of Continental Casualty Company ("Continental Casualty") with respect to the lawsuits and talc-related subpoena matters (collectively, referred hereinafter as "the Talc Actions"). As discussed below and as previously agreed to, it is Continental Casualty's position that all of the Talc Actions, and any future, subpoenas, demands, claims or lawsuits arising out of alleged ovarian/asbestos-related cancer injuries caused by Talc are "related claims" which are deemed a single "claim" under Products-Work Hazard Liability Policy No. ADT-4016003473 issued by Continental Casualty for the policy period June 8, 2017 to June 8, 2018 ("Policy"). Further, Continental Casualty reserves rights for the reasons set forth below.

## BACKGROUND – THE TALC ACTIONS

www.cna.com



Presently, Continental Casualty has been provided notice of the following lawsuits:

1) **Hannah v. Johnson & Johnson, Inc. et al.**, Cause No. 1722-CC10745, Circuit Court of St. Louis County, Missouri ("Hannah Action"). We understand that the Hannah Action was removed to the United States District Court for the Eastern District of Missouri (Case No. 4:17-cv-02647), and that recently the Hannah Action was ordered transferred to the United States District Court of the District of New Jersey, and made part of In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation, Case No. 3:16-MD-02738.

2) **Johnson v. Johnson & Johnson, Inc. et al.**, Cause Number 1722-CC10919, Circuit Court of the City of St. Louis, Missouri ("Johnson Action"). We understand that the Johnson Action was removed to the United States District Court for the Eastern District of Missouri (Case No. 4:17-cv-02651), and that recently the Johnson Action was ordered transferred to the United States District Court of the District of New Jersey, and made part of In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation, Case No. 3:16-MD-02738.

3) **Williams v. Johnson & Johnson, Inc. et al.**, Cause No. 1716-CV-22043, Circuit Court of Kansas City, Missouri ("Williams Action").

4) **Cartwright v. Johnson & Johnson, Inc. et al.**, Cause No. 1722-CC11681, Circuit Court of St. Louis, Missouri ("Cartwright Action"). We understand that the Cartwright Action was removed to the United States District Court for the Eastern District of Missouri (Case No. 4:17-cv-02851).

5) **Kassimali v. Johnson & Johnson, Inc. et al.**, Cause Number 1722-CC11872, Circuit Court of the City of St. Louis, Missouri ("Kassimali Action").

6) **Gavin v. Johnson & Johnson, Inc. et al.**, Cause No. 1822-CC00002, Circuit Court of the City of St. Louis, Missouri ("Gavin Action").

7) **Reising v. Johnson & Johnson, Inc et al.**, Cause No. 1822-CC00237, Circuit Court of the City of St. Louis, Missouri ("Reising Action").

The Plaintiffs in the Talc Actions generally allege that the Defendants' conduct, including PTI Union LLC and PTI Royston ("PTI Defendants"), was negligent, willful and wrongful in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling and/or sale of Johnson & Johnson Baby Powder and Shower to Shower (the "Products"). Plaintiffs allege that the PTI Defendants are in the business of processing, bottling, labeling, packaging, and/or distributing talcum powder based produces, including the Products. It is alleged that the Johnson Defendants and/or the PTI Defendants, at the direction of the Johnson Defendants, manufactured the Products which are composed almost entirely of talc. Plaintiffs allege that at all relevant times a feasible alternative, Cornstarch, was available.

Plaintiffs allege that the Material Safety Data Sheet (MSDS) supplied to the Johnson and PTI Defendants by Defendant Imerys Talc expressly warned of the ovarian cancer hazard associated with perineal talc use, an intended use of the Products. Plaintiffs allege active, tortious conduct by receiving shipments of talc from Imerys with the express warning, and then disregarding the warning, processed, bottled, mislabeled, mispackaged and distributed the Products without the warning, thereby creating a dangerous condition. Among other things, it is alleged that the PTI Defendants knew or should have known that the Products were unreasonably dangerous and defective when put to their reasonably anticipated use.

With respect to the PTI Defendants, the Talc Actions allege: (1) Strict Liability for Failure to Warn; (2) Strict Liability for Defective Manufacture and Design; (3) Negligence; (4) Breach of Implied Warranties; (5) Civil Conspiracy; (6) Concert of Action; (7) Wrongful Death;[1] and (8) Punitive Damages. Plaintiffs seek compensatory and punitive damages in excess of $25,000.

Additionally, Continental Casualty has received information regarding a lawsuit styled Schackne et al. v. 3M Company et al., Case No. JCCP 4674/BC637974, pending in the Superior Court of Los Angeles County, California. The Schackne Action alleges that the decedent developed mesothelioma as a result of exposure to asbestos in Caldesene manufactured by PTI.

Continental Casualty does not contend that any of the allegations in the Talc Actions are true, and sets the allegations forth herein only for purposes of discussing the coverage issues.

Additionally, Continental Casualty has received notice of certain subpoenas duces tecum seeking documents and information related to talc-containing products made pursuant to contracts with Chattem, Prestige, Valeant and others, including the subpoena in the Gail Ingham Action (Cause No. 1522-CC10417-01) and Valerie Swann Action (Cause No. 1422-CC09326-01). Again, it is Continental Casualty's position that all of these matters are :related claims" and as such these matters and all subsequent "related claims" will be deemed a single "claim" under the 2017/2018 Policy.

Caroline Tinsley of the law firm Baker Sterchi Cowden & Rice LLC is assisting in the response to these subpoenas and is representing PTI in the Talc Action. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ In the meantime, Ms. Tinsley will be submitting invoices to Continental Casualty for these expenses.

## THE CONTINENTAL CASUALTY POLICY

Continental Casualty Company issued claims-made Policy No. ADT-4016003473 to Broadview Investments LLC for the policy period June 8, 2017 to June 8, 2018 ("Policy"). The Products-Work Hazard limits are $10,000,000 Each Claim and in the Aggregate, with an Each Claim Deductible of $25,000/ $250,000 Aggregate, with a retroactive date of June 8, 2010. Claim

---

[1] The Hannah Action does not include a cause of action for Wrongful Death. If you are aware of an amended Petition or Complaint filed with respect to the Hannah Action, please forward it to us immediately.

Expenses are included within the limits. By endorsement, PTI Union, LLC and PTI Royston, LLC are Named Insureds on the Policy.

The Coverage Agreements in the Life Sciences Liability Policy Products-Work Hazard Liability Coverage Part (Form CNA73251XX 05-2015) provide in pertinent part:

> The Insurer will pay all amounts in excess of the deductible up to the limit of liability that the **Insured** becomes legally liable to pay as **damages** as a result of:
>
> A.  **bodily injury** or **property damage** caused by an **occurrence and** arising out of a covered **products-work hazard claim**;
>
> * * *
>
> provided that coverage applies to **claims** only if:
>
> 1.  such **claim** is both first made against the **Insured** during the **policy period** …
>
> * * *
>
> 4.  such **occurrence** or offense, first occurred on or after the retroactive date, if any specified in the Declarations.
>
> * * *
>
> In addition, the Insurer will pay all **defense costs** in excess of the deductible and up to the limit of liability in connection with a covered **claim**. **Defense costs** are included within and erode both the limits of liability and the deductible.

In pertinent part, "Occurrence" is defined as follows:

> **Occurrence** means an accident, including continuous or repeated exposure to the same general harmful conditions. An **occurrence** will be deemed to have occurred on the earliest date:
>
> A.  **insured product** or insured **work** giving rise to such **claim** was first ingested, implanted, applied or otherwise used;
>
> B.  a **claim** is made alleging **bodily injury** or **property damage** resulting from **insured product** or **insured work**;
>
> * * *
>
> E.  death occurs as a result of exposure to **insured product** or **insured work**;

The Policy's Product-Work Hazard Coverage Part includes the following potentially applicable exclusions:

This **coverage part** does not apply to any **claim** against any **Insured**:

\* \* \*

4. **Dishonest, Fraudulent, Criminal, Malicious Act or Intentionally Wrongful Acts**

    based on or arising out of any actual or alleged dishonest, fraudulent, criminal, malicious or intentionally wrongful act any **Insured**. The Insurer shall provide the **Insured** with a defense of such **claim** unless or until the dishonest, fraudulent, criminal, malicious or intentionally wrongful act has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of its rights under this policy. Criminal proceedings are not covered under this policy regardless of the allegations made against an **Insured.**

    For purposes of determining the applicability of this exclusion:

    a.  the facts pertaining to and knowledge possessed by any natural person **Insured** shall not be imputed to any other natural person **Insured**; and

    b.  only facts pertaining to and knowledge possessed by any **Insured** as set forth under paragraph **A.** of the definition of **Insured** in the **GLOSSARY OF DEFINED TERMS** shall be imputed to the **Insured Entity**;

\* \* \*

7. **Expected or Intended Injury**

    based on or arising out of any actual or alleged **bodily injury** or **property damage** expected or intended from the standpoint of any **Insured**. This exclusion does not apply to:

    a.  **bodily injury** resulting from the use of reasonable force to protect persons or property; or

    b.  **bodily injury** that is intended or can be expected to result from reasonable use of **insured product;**

The Limits of Liability and Deductible provisions in the Life Sciences Liability Policy Common Conditions (Form CNA73164XX 05-2015) includes the following:

### G.  Related Claims

If, during the **policy period**, a **claim** is made and if either **Insured Entity** or the Insurer declares in writing to the other that such **claim** is likely to give rise to subsequent **related claims**, then such **claim** and all such subsequent **related claims**, shall be deemed a single **claim**. The limits of liability applicable to such single **claim** are the limits of liability in effect for the policy, in which the declaration was made.

In relevant part, "related claims" is defined to mean "all **claims** ... arising out of the same **occurrence** or **related occurrence**.

The Policy includes the following definition of "related occurrence":

**Related occurrence** is an **occurrence** giving rise to **bodily injury** or **property damage** which **bodily injury** or **property damage** is attributable directly, indirectly or allegedly to the same actual or alleged event, condition, cause, defect, hazard, advise or decision in the design, formulation, manufacturing, distribution, sale, testing, use, operation, maintenance, repair or replacement of **insured product** or **insured work**. Such **related occurrence** exists regardless of:

A.  when or where such **bodily injury** or **property damage** occurs; or

B.  the number of such **bodily injury** or **property damage**.

The Policy's Other Insurance or Risk Transfer Arrangements provision provides in pertinent part:

If the **Insured** is entitled to be indemnified or otherwise insured in whole or in part by any other insurance, self insurance or indemnity agreement for any **claim** or **incident** which otherwise would have been indemnified in whole or in part by this policy, the limits of liability specified in the Declarations shall apply in excess of, and shall not contribute to a **claim** or **incident** covered by such other insurance. This paragraph does not apply to any other insurance that was bought specifically to apply in excess of the Limits of Liability shown in the Declarations of this Policy.

The Insurer will have no duty under this policy to defend the **Insured** against any **claim** if any other insurer has a duty to defend the **Insured** against that **claim**. If no other insurer defends, the insurer will undertake to do so, but it will be entitled to the **Insured's** rights against all those other insurers.

**COVERAGE POSITION**

It is Continental Casualty's position that the Talc Actions are "related claims" as that term is defined in the Policy. Each of the Talc Actions alleges the same course of conduct and actions by PTI. As such, the Talc Actions all arise out of the same "occurrence" or "related occurrence" as those terms are defined in the Policy. Thus, coverage, if any for the Talc Actions is limited to a single Each Claim limit and a single Deductible.

Please note that Continental Casualty will treat all talc claims which meet the following criteria to be "related claims":

**All claims alleging ovarian cancer and/or asbestos-related cancers, including mesothelioma, arising out of the use of talc powder manufactured by PTI after June 8, 2010, and caused by an "occurrence" that first occurred on or after the retroactive date of June 8, 2010. Any claims involving talc that was manufactured prior to June 2, 2010, and/or an "occurrence" after the retroactive date is not covered because it is before the Policy's Retroactive Date. This claim relation includes all of the claims and Talc Actions listed above, and any claims, demands, subpoenas or lawsuit subsequently made related to talc powder alleging ovarian cancer and/or asbestos-related cancers. Furthermore, we expressly reserve the right to amend the scope of this claim relation as the facts or circumstances warrant.**

We understand that PTI began manufacturing talc-containing products for Johnson & Johnson starting in 2004 or 2005. Further, many of Plaintiffs in the Talc Actions allege exposure to talc dating back decades. The Products-Work Hazard Coverage provides coverage for "bodily injury" arising out of "products-work hazard claims," but only to the extent that the "occurrence" first occurred on or after the retroactive date. Under the circumstances, Continental Casualty reserves the right to deny coverage to the extent the Talc Actions arise out of an "occurrence" that first occurred prior to June 8, 2010.

The Talc Actions allege, among other things, that PTI knew that the use of the Products significantly increased the risk of ovarian cancer in women, that PTI, along with the other Defendants willfully misrepresented and suppressed the truth with respect to the risks and dangers associated with the use and exposure to the Products, and that Defendants purposely suppressed information and warnings regarding the risk of ovarian cancer. As such, Continental Casualty reserves rights to the extent the Expected or Intended Injury Exclusion and the Dishonest, Fraudulent, Criminal, Malicious Act or Intentionally Wrongful Acts Exclusion limit or preclude coverage for the Talc Actions.

Further, Continental Casualty reserves right to the extent the Other Insurance provision in the Policy applies.



[REDACTED] In the interim, Ms. Tinsley will be submitting invoices to Continental Casualty for these defense-related expenses.

We also request that if there is any other coverage, whether insurance policies, indemnity contracts or risk transfer agreements, which may provide coverage for the Talc Actions, please forward those documents to us immediately and place any other insurers or third-parties on appropriate notice.

**CONCLUSION**

As discussed above, Continental Casualty is treating the Talc Actions addressed in this letter, as well as all claims noticed to Continental Casualty after the date of this letter that meet the above description, as one related claims made in the June 8, 2017 to June 8, 2018 policy term. Any such claim will be designated by claim number HMA45749. PTI will be responsible for a single deductible for all such claims combined.

Please construe this letter as Continental Casualty's position on the applicability of coverage for the aforementioned claims or as a waiver of any rights under the policy. Any investigation in connection with these claims should not be construed as an admission of coverage or as a waiver of any rights that Continental Casualty may have under the Policy. Continental Casualty reserves all rights afforded under the policy and under relevant law. The present coverage position is based on the information currently available to Continental Casualty. If you have additional information which you believe may impact our coverage position, please forward it to the undersigned for our immediate consideration. Continental Casualty reserves the right to amend or modify its coverage position as additional information develops.

If you have any questions or comments in response to the foregoing, please contact the undersigned.

Sincerely,


Danna George
Continental Casualty Company